## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

POSTAL POLICE OFFICERS
ASSOCIATION
900 Brentwood Rd NE
Room 2106
Washington, DC 20066,

      Plaintiff,

vs.

UNITED STATES POSTAL SERVICE;
and LOUIS DEJOY *in his official
capacity as United States Postmaster
General*
475 L'Enfant Plaza SW
Washington, DC 20260,

      Defendants.

Case No. 20-cv-2566

---

## COMPLAINT FOR INJUNCTIVE RELIEF

The Postal Police Officers Association ("PPOA") states for its complaint against the United States Postal Service ("USPS" or "Postal Service") as follows:

1.      This is an action for an injunction.  The Postal Service caused this dispute on August 25, 2020 when it directed its police officers nationwide to end all mail-protection and other law-enforcement activity away from the confines of postal real estate.  The Postal Service ordered its police officers to stop investigating and preventing mail theft and mail tampering, crimes against postal employees, and all community-policing efforts except within post office buildings.  Pursuant to its

collective bargaining agreement with the Postal Service, the PPOA filed a national-level grievance on September 8, 2020 which, if not resolved, will go to decision before a neutral arbitrator.

2.      Since 1971, postal police officers have served as the uniformed division of the Postal Service's Inspection Service.  Their statutory law-enforcement jurisdiction is similar to that of postal inspectors and is found in the same statute, 18 U.S.C. § 3061.

3.      From their inception, Postal Police Officers have been tasked with protection of U.S. mail.  For example, for decades, Postal Police Officers have been assigned as law-enforcement protection to certain high-value mail shipments or shipments of postal remittances that travel on public roads.

4.      Congress amended the jurisdictional authority of Postal Police Officers in 2006.  Since that time, the Postal Service has increasingly used Postal Police Officers to investigate and prevent theft of U.S. mail and to protect USPS employees as they work in public.

5.      Postal Police Officers have arrested countless individuals for all manner of crimes away from postal real estate, either by themselves or in concert with other agents.  Those officers were often tasked with conducting searches and seizures of arrested individuals, with the evidence obtained used to help secure criminal convictions and imprisonment for some of those arrested.

6.      In federal court in Massachusetts in 2016, USPS managers testified that the change in Postal Police duties since 2006 was a "paradigm shift," with

those officers increasingly focused on protection of the mail and postal personnel on public streets.

7.     As of January 2020, USPS was specifically training and instructing Postal Police Officers on investigating and enforcing mail-theft laws away from postal facilities.

8.     On August 25, 2020, the Postal Service announced a unilateral change through a National Communication to all Postal Divisions.  The Postal Service declared that Postal Police Officers' legal authority was limited only to the *real* property of the Postal Service.  It wrote: "PPOs may not exercise this law enforcement authority in contexts unrelated to Postal Service premises."  It declared that Postal Police Officers should no longer be assigned to investigate or prevent mail theft or protection of letter carriers.

9.     The Postal Service's sudden change is unwarranted, impermissible, and contrary to the language of the statute and also to collective bargaining promises it has made to the officers' union.  The new policy puts PPOs and other postal employees in increased danger and increases the likelihood of criminal activity against Postal Service employees and the U.S. mail.  The Court should enjoin it.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction over this action pursuant to 39 U.S.C. § 409(a) as this is an action against USPS.  The Court also has jurisdiction under 39 U.S.C. § 1208(b) as this is a suit for breach of a collective bargaining agreement

between USPS and a union of postal employees.

11.     Venue lies in this district under 39 U.S.C. § 1208(b) as this Court has jurisdiction over PPOA and USPS and USPS maintains its national headquarters in this District. In addition, venue lies in this District under 28 U.S.C. § 1391(b)(1) because USPS resides in this District and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## THE PARTIES

12.     PPOA is a labor union that at all relevant times has served as the collective bargaining representative of a nationwide bargaining unit of uniformed police officers employed by USPS.

13.     These officers are currently deployed from designated metropolitan areas around the country: Atlanta, Baltimore, Boston, Chicago, Cleveland, Dallas, Houston, Los Angeles, Memphis, Miami, New Orleans, New York, Newark, Oakland, Philadelphia, Pittsburgh, San Francisco, St. Louis, and Washington, D.C. In addition, the Postal Service has deployed officers away from those areas and across state lines to aid law-enforcement efforts regarding the mail in other cities and areas.

14.     USPS is an independent establishment of the executive branch of the United States Government. It operates postal facilities throughout the United States from which mail and packages are delivered across the country and from around the world. Louis DeJoy is the United States Postmaster General.

## FACTUAL ALLEGATIONS

**Duties and responsibilities before 2005**

15.     The Postal Police Officer position was created in 1971.  Operationally, Postal Police Officers have been part of the Postal Service's Inspection Service, its law-enforcement arm.

16.     From their earliest days the Postal Service tasked these officers with duties that included "security" and "loss prevention" with respect to the mail and postal property.  These early postal police officers were expected to conduct "surveillance" and "investigative assignments," including "complete investigations of reported misdemeanors and minor crimes."

17.     Congress provided law-enforcement authority to these officers as "special police officers" under Title 40 of the U.S. Code through annual appropriations bills.

18.     At all relevant times, Postal Police Officers have been trained as police at federal law-enforcement training academies alongside other federal law-enforcement officers, have carried firearms, and have been trained to identify themselves to the public as police officers and act accordingly.

19.     Since their inception, Postal Police Officers have also been assigned to secure and protect mobile deliveries of registered mail and high-value mail shipments on public roads and highways.  Indeed, their presence on high-value shipments was once expressly warranted to customers by the Postal Service in regulations issued in the early 1990s.  During these protection runs, Postal Police

Officers are armed with appropriate firearms and expected to protect and secure the delivery of the mail and other deliveries while traveling on public roads.

20.     The Postal Service recognized its police officers' law-enforcement authority away from postal real estate.  For example, on November 5, 1990, Postal Police Officer Carlos Acosta successfully arrested El Sayyid Nosair on the sidewalk outside the Marriott East Side Hotel on Lexington Avenue in New York after he allegedly shot Rabbi Meir Kahane.  Officer Acosta made the arrest after exchanging gunfire with Nosair and suffering gunshot wounds, which thankfully were absorbed by the bulletproof vest that Acosta wore.

21.     Nosair was prosecuted in the Southern District of New York for his role in Kahane's death.  At no time in that case did the federal government state or disclose to the defense that Officer Acosta lacked legal authority to shoot at Nosair on a public sidewalk away from a postal facility or to arrest him there.  To the contrary, the Postal Service awarded Officer Acosta its highest honor, the Meritorious Service Award.

22.     In 1990, the Postal Service issued a new job description for Postal Police Officers.  The Postal Service explicitly wrote that its police officers have the responsibility to protect mail and mail in transit, as well as their other law-enforcement tasks.

23.     All through this time period, the courts routinely held that the "property" of the Postal Service included mail and mail in transit, as well as other forms of chattel property.

**Postal Accountability and Enforcement Act and "the Paradigm Shift"**

24.     In 2006, Congress passed the Postal Accountability and Enhancement Act (PAEA), which President Bush signed into law.  The PAEA was intended to modernize postal operations and force the Postal Service to operate with greater fiscal discipline.

25.     Congress addressed the role of postal police officers, expanding their jurisdiction and memorializing that expansion in an amendment to 18 U.S.C. § 3061, which previously set forth the law-enforcement power of postal inspectors. Congress changed that section to add the powers of postal police officers.

26.     Congress granted Postal Police Officers full federal law-enforcement authority, with a nexus to "property" of the Postal Service.

27.     The legislative history of the PAEA confirms that Congress was expressly aware of the law-enforcement duties of Postal Police with respect to mail away from postal real estate and they dd not wish to limit that.  It is apparent that the reference to postal "property" in the statute is not limited just to real property of the Postal Service, but rather extends to real and chattel property.

28.     The Postal Service has historically paid its Police Officers salaries and benefits that are less than half of what it pays to Postal Inspectors.  By expanding Postal Police Officers' jurisdiction, Congress sought to enable the Postal Service a less-costly form of law-enforcement officers to address many types of criminal activity.

29.     In the years following the PAEA, the Postal Service dramatically

changed and expanded the assigned duties of Postal Police.  It mostly replaced Postal Police Officers for building-security functions with contract security guards. The Postal Service increasingly deployed Postal Police Officers for mobile patrols away from postal facilities, to protect letter carriers and the mail in dangerous areas, to stop mail theft from carriers and from collection boxes, and to insure the safety of the mail at airports.

30.     The Postal Service itself has described this change in duties as a "paradigm shift."   In 2016, the head of Postal Police operations testified in federal court about the role of Postal Police officers:

- "[T]he U.S. Postal Inspection Service . . . is composed of postal inspectors who are the agents, Postal Police officers who are uniformed officer and support staff . . . ."

- "[T]hink of them as a fully functioning police department whose responsibilities are security for postal facilities, protection of postal employees, protection of the mail in transit, preventing the use of mails for illegitimate purposes, mailing child pornography, mailing drugs through the mail."

- "PPOs are responsible for providing a visible uniformed law enforcement presence at our primary facilities.  We have increasingly used them as mobile agents in the street as attacks on our carriers have increased, and crimes like mail fishing, for example, would be a -- our blue collection boxes, folks are finding ways to stick lines with glue, with hooks, with other implements, and

pull mail out of the boxes."

- "Having that visible uniformed presence on the street is very effective in combatting that. So PPOs' role is to respond to emergency and contain those situations until additional resources, postal inspectors, local P.D., fire department can respond to the events with a postal nexus."

31.    The District Court credited this testimony in its decision following the bench trial. *Anderson v. Brennan*, No. 14-13380-PBS, 2017 WL 1032502 (D. Mass. 2017). The Court wrote:

- "The Postal Police are a uniformed police force whose responsibilities include providing security for postal facilities and employees, protecting mail while in transit, and preventing the use of mails for illegitimate purposes."

- "The role of the Postal Police has evolved somewhat over time. Previously, PPOs were mainly responsible for security watches at entry posts and guard posts. Beginning around 2001, the Postal Police began to contract with private security to handle some of the security work previously carried out by PPOs. A greater portion of PPO work became street patrol and emergency response in marked cruisers. As a result, the work of PPOs became more challenging."

32.    As the Postal Service testified in that case, and as the District Court found, Postal Police Officers regularly and routinely exercised their authority on behalf of the Postal Service out in the public, combatting mail theft and tampering and protecting postal employees, who are increasingly the victims of crime while

9

performing their duties.

33.     Postal Service witnesses have testified in multiple fora that PPOs properly exercise full law-enforcement authority under Section 3061 when they encounter criminal activity with respect to postal property or personnel away from postal facilities.

**The Collective Bargaining Agreement**

34.     At all relevant times PPOA and USPS have been parties to collective bargaining agreements ("CBAs") that set forth terms and conditions of employment of postal police officers.

35.     Article 15 of the CBA contains a grievance-arbitration procedure under which PPOA may demand arbitration of unresolved disputes that arise under the CBA.  Article 15, Section 15.04 allows PPOA to file a national-level grievance regarding the interpretation of the CBA.  It provides that, absent resolution of the dispute, PPOA may appeal the dispute to arbitration.

36.     Article 5 of the CBA prohibits unilateral actions by USPS that affect postal police officers' wages, hours, and other terms and conditions of employment established by the parties' CBA or that are otherwise inconsistent with its obligations under law.

37.     Article 6 of the CBA sets forth certain rights and responsibilities of postal police officers.

38.     Article 14 of the CBA sets forth safety and health requirements for USPS.

10

39.     Article 19 of the CBA addresses postal handbooks, manuals, and other published regulations of USPS.  Section 19.01 provides that those parts of manuals, handbooks, and regulations that directly relate to postal police officers' wages, hours, or working conditions may not conflict with the CBA <u>and</u> must be continued in effect, with the sole exception that the USPS may make changes that do not conflict with the CBA and that are fair, reasonable, and equitable.

40.     Section 19.02 requires USPS to provide the PPOA at least sixty (60) days advance notice of any proposed change and requires consultation with the Union prior to issuance. This section further permits the Union to challenge the propriety of the change through arbitration.

41.     Several USPS manuals, handbooks, and other regulations directly relate to postal police officers' hours, wages, and working conditions.  Among those is Inspection Service Handbook 701, which was most recently updated in 2007 after Congress enacted the PAEA.  The IS-701 acknowledges that postal police officers lawfully exercise jurisdiction away from postal real estate when they are on mobile patrols.  It also expressly provides that PPOs' duties including protection of U.S. mail shipments on public roads.

42.     Another regulation is the Inspection Service Handbook 702, which was most recently updated in 2002.  This handbook likewise provides that Postal Police Officers properly exercise authority to protect and secure mail shipments on public roads.  Indeed, the document states that Postal Police Officers' "primary functions" include "Protecting government property, including property of the Postal Service,

as well as other property within the postal system" and "Protecting all mail in the custody of the U.S. Postal Service."

**The Dramatic Changes in 2020**

43.     As of January 2020, the Postal Service continued to routinely assign Postal Police Officers on mobile patrols to investigate and prevent theft of mail on the street and also to protect letter carriers from assault and robbery in dangerous areas.

44.     In February 2020, however, Deputy Chief Inspector of the Postal Service, Craig Goldberg, testified during an interest arbitration proceeding that he did not know whether Postal Police Officers had law-enforcement authority away from postal real estate.  He speculated that if Postal Police Officers lacked such authority, they might be exposing themselves to civil liability if they incorrectly exercised law-enforcement authority.  Despite this assertion, the Postal Service continued to routinely assign Postal Police Officers to law-enforcement duties off postal real estate in support of mail protection or protection of postal personnel.

45.     On August 25, 2020, Deputy Chief Inspector David Bowers issued a National Communication to all Inspection Service Divisions.  According to Bowers, Postal Police Officers no longer had any law-enforcement authority, whatsoever, except when they are physically stationed on real estate owned or leased by the Postal Service.  Accordingly, Bowers directed that PPOs immediately cease and desist from any and all law-enforcement activity except within postal facilities.

46.     As a consequence of Bowers' directive, PPOs have been mostly limited

12

to duties inside postal facilities.  Some PPOs have been sent out in support of their old duties but those PPOs are fearful the Postal Service will not support them if they encounter criminal activity on their patrol.

47.     Because PPOs are being held at stations, many of their previous duties are going unfulfilled.  The only other postal personnel who have the same law-enforcement jurisdiction are Postal Inspectors, who mostly work 9-5 shifts.  Postal Police, by contrast, are scheduled around the clock, seven days a week. Consequently, their off-site mobile patrols are going undone. Because of this abrupt policy change, in many places, the U.S. mail and postal personnel are receiving less protection.

## COUNT I:
## Claim for an Injunction Pending Arbitration

48.     PPOA repeats and realleges the foregoing allegations as if fully set forth herein.

49.     Postal Police Officers nationwide have suffered or will suffer irreparable injury as a result of the Defendants' decision to no longer recognize or countenance their law-enforcement authority away from postal real estate.  These are harms that cannot be remedied retroactively by an arbitration award or through the payment of any type of damages.

50.     PPOA is likely to prevail on the merits of its arbitration claim that the Postal Service breached the CBA by unilaterally abandoning almost 50 years of precedent and declaring on August 25, 2020 that Postal Police Officers have no law-enforcement authority to protect the integrity of the mail and the safety of postal

employees away from the confines of USPS real estate.

51.     Defendants will suffer no harm by having to rescind the August 25, 2020 policy change and by again recognizing that Postal Police Officers have law-enforcement authority with respect to USPS property, including the mail, away from the confines of USPS real estate.

52.     The public interest in ensuring the integrity of the mail and ensuring the safety of postal employees favors granting the requested injunction.

53.     For these reasons, the Court should issue the requested injunction.

**COUNT II:**
**Ultra Vires Elimination of Statutory Authority**

54.     PPOA repeats and realleges the foregoing allegations as if fully set forth herein.

55.     The Defendants' unilateral recategorization and purported limitation of Postal Police Officers' lawful duties and responsibilities was implemented without Congressional authorization or permissible change in regulations.

56.     Congress intended in 18 U.S.C. § 3061(c) that Postal Police Officers have authority to protect the mail and other postal property away from postal real estate.

57.     Congress was specifically aware in 2006 when it wrote that new jurisdictional statute that Postal Police Officers protected the integrity of the mail away from postal real estate.

58.     Congress enacted the amendments to Section 3061 against a backdrop of judicial decisions that recognized that Postal Police Officers were exercising law-

14

enforcement authority away from postal real estate.

59.     Congress enacted the amendments against a backdrop of judicial decisions that recognized the definition of USPS "property" included mail, as well as including all other forms of chattel property.

60.     By unilaterally restricting postal police officers to postal real estate and decreeing they lack law-enforcement authority away from that real estate, Defendants are acting in excess of their statutory authority by defying Congress' direction that Postal Police Officers have law-enforcement authority to protect the mails and other postal property away from postal real estate.

61.     This Court has jurisdiction to enjoin Defendants' action in excess of their statutory authority.

62.     Plaintiff's members, other postal employees, and the general public will be irreparably harmed by Defendants' ultra vires action if it is not enjoined.

## PRAYER FOR RELIEF

WHEREFORE, the PPOA respectfully asks the Court to do the following:

a.     Issue an injunction, either permanently or until an arbitration award issues, that requires the Defendants to rescind the August 25, 2020 National Communication and that otherwise enjoins the Postal Service to recognize and acknowledge the jurisdictional authority of Postal Police Officers to exercise law-enforcement authority with respect to U.S. mail and other postal property;

b.     Issue such other and further relief that the Court deems appropriate; and

c.     Award the PPOA its reasonable attorneys' fees and other costs of suit.

Dated September 14, 2020                 Respectfully submitted,


 s/ Arlus J. Stephens
Arlus J. Stephens (0067384)
 astephens@murphypllc.com
Roseann R. Romano (1034895)
rromano@murphypllc.com
Charles A. Sinks (888273315)
 csinks@murphypllc.com
Murphy Anderson PLLC
1401 K Street NW, Suite 300
Washington, DC  20005
Phone: 202.223.2620
Fax: 202.296.9600

Counsel for Postal Police
Officers Association