UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POSTAL POLICE OFFICERS ASSOCIATION, *Plaintiff*, v. UNITED STATES POSTAL SERVICE, *et al*., *Defendants*. | Civil Action No. 20-2566 (CRC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' [1] MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND [2] OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY <u>RESTRAINING ORDER AND/OR A PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

    A.  The United States Postal Service ............................................... 2

    B.  The U.S. Postal Inspection Service ........................................... 3

    C.  The Postal Police Officers Association ...................................... 5

    D.  The Law Enforcement Authority of Postal Police Officers ........... 6

    E.  Procedural History .................................................................. 8

LEGAL STANDARDS ......................................................................................... 10

    A.  Dismissal Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction ............... 10

    B.  Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim ................................. 10

    C.  Issuance of a Temporary Restraining Order or Preliminary Injunction......................... 11

ARGUMENT ....................................................................................................... 12

    A.  Plaintiff's *Ultra Vires* Claim Fails .......................................... 12

    B.  This Court Lacks Jurisdiction to Issue an Injunction Pending Arbitration.................... 21

    C.  In Any Event, Plaintiff Has Not Shown Entitlement to Injunctive Relief ..................... 26

CONCLUSION..................................................................................................... 34

i

## TABLE OF AUTHORITIES

**Cases**

*Aamer v. Obama*,
    742 F.3d 1023 (D.C. Cir. 2014) ......................................................................... 11
*Abdullah v. Obama*,
    753 F.3d 193 (D.C. Cir. 2014) ........................................................................... 11
*Aid Ass'n for Lutherans v. U.S. Postal Serv.*,
    321 F.3d 1166 (D.C. Cir. 2003) ......................................................................... 12
*Aluminum Workers Int'l Union v. Consol. Aluminum Corp.*,
    696 F.2d 437 (6th Cir. 1982) ............................................................................. 23
*Am. Fed'n of Gov't Employees, AFL-CIO v. Trump*,
    929 F.3d 748 (2019) ........................................................................................... 19
*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*,
    372 F. Supp. 2d 83 (D.D.C. 2005) ............................................................... 11, 24
*Arriva Med. LLC v. U.S. Dep't of Health & Human Servs.*,
    239 F. Supp. 3d 266 (D.D.C. 2017) ................................................................... 30
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................... 10
*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 10
*Board of Governors of Fed. Reserve Sys. v. MCorp Financial, Inc*,
    502 U.S. 32 (1991) ...................................................................................... passim
*Bovard v. U.S. Post Office*,
    47 F.3d 1178 (10th Cir. 1995) ........................................................................... 17
*Boys Markets, Inc. v. Retail Clerks Union, Local 770*,
    398 U.S. 235 (1970) ........................................................................................... 22
*Buchanan v. U.S. Postal Serv.*,
    508 F.2d 259 (5th Cir. 1975) ....................................................................... 20, 21
*Buffalo Forge Co. v. United Steelworkers of Am.*,
    428 U.S. 397 (1976) ................................................................................. 1, 22, 23
*Ctr. for Biological Diversity v. EPA*,
    861 F.3d 174 (D.C. Cir. 2017) ........................................................................... 18
*Curran v. Holder*,
    626 F. Supp. 2d 30 (D.D.C. 2009) ..................................................................... 10
*Davis v. Pension Benefit Guar. Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009) ......................................................................... 31
*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
    319 F. Supp. 3d 70 (D.D.C. 2018) ..................................................................... 11
*EEOC v. St. Francis Xavier Parochial School*,
    117 F.3d 621 (D.C. Cir. 1997) ........................................................................... 10
*Food Drivers, Helpers, & Warehousemen Employees, Local 500 v. Samuel Zuckerman Co.*,
    Civ. A. No. 89-2313, 1989 WL 73771 (E.D. Pa. June 30, 1987) ........................... 32
*Foster v. Pitney Bowes Corp.*,
    549 F. App'x 982 (Fed. Cir. 2013) ..................................................................... 17

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*,
   561 U.S. 477 (2010) ................................................................................ 18, 19
*Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) ................................................................. 29, 30
*Graphic Commc'ns Conference-Int'l Bhd. of Teamsters Local 404M v. Bakersfield Californian*,
   541 F. Supp. 2d 1117 (E.D. Cal. 2008) ......................................................... 32
*Griffith v. FLRA*,
   842 F.2d 487 (D.C. Cir. 1988) ................................................................. 12, 13
*Hunter v. FERC*,
   569 F. Supp. 2d 12 (D.D.C. 2008) .............................................................. 12
*In re Series 7 Broker Qualification Exam Scoring Litig.*,
   548 F.3d 110 (D.C. Cir. 2008) ..................................................................... 18
*Indep. Oil & Chem. Workers of Quincy, Inc. v. Proctor & Gamble Mfg. Co.*,
   864 F.2d 927 (1st Cir. 1988) ........................................................................ 23
*Int'l Bhd. of Teamsters Local Union 639 v. Airgas, Inc.*,
   885 F.3d 230 (4th Cir. 2018) ....................................................................... 26
*Jacksonville Port Auth. v. Adams*,
   556 F.2d 52 (D.C. Cir. 1977) ...................................................................... 33
*Jarkesy v. SEC*,
   803 F.3d 9 (D.C. Cir. 2015) ........................................................................ 19
*Jeffries v. Volume Servs. Am.*,
   928 F.3d 1059 (D.C. Cir. 2019) ................................................................... 15
*LeMay v. U.S. Postal Serv.*,
   450 F.3d 797 (8th Cir. 2006) ....................................................................... 17
*Lever Brothers Co. v. International Chemical Workers Union*,
   554 F.2d 115 (4th Cir. 1976) ....................................................................... 24
*Local Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Panoramic Corp.*,
   668 F.2d 276 (7th Cir. 1981) ....................................................................... 24
*Lujan v. Defs. Of Wildlife*,
   504 U.S. 555 (1992) .................................................................................... 15
*Media Access Project v. FCC*,
   884 F.2d 1063 (D.C. Cir. 1989) ................................................................... 18
*Mittleman v. Postal Regulatory Comm'n*,
   757 F.3d 300 (D.C. Cir. 2014) ..................................................................... 12
*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*,
   437 F.3d 1256 (D.C. Cir. 2006) ..................................................... 13, 14, 15, 19
*Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc.*,
   969 F. Supp. 2d 59 (D. Mass. 2013) ............................................................ 26
*Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*,
   419 F. Supp. 3d 127 (D.D.C.  2019) ............................................... 12, 22, 23, 25
*Nat'l Ass'n of Postal Supervisors v. USPS*,
   No. 18-cv-2236 (RCL), 2020 WL 4039177 (D.D.C. July 17, 2020) ................... 13
*Nat'l Post Office Mail Handlers v. U.S. Postal Serv.*,
   Civ. A. No. 78-0068, 1978 WL 14027 (D. Neb. Apr. 13, 1978) ...................... 26, 27

*Niagara Hooker Emps. Union v. Occidental Chem. Corp.*,
  935 F.2d 1370 (2d Cir. 1991) ......................................................... 23, 24
*Nyunt v. Broadcasting Bd. of,*
  *Govs.*, 589 F.3d 445 (D.C. Cir. 2009) .............................................. 12
*Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*,
  280 F. Supp. 3d 118 (D.D.C. 2017) ................................................. 30
*Physicians Nat. House Staff Ass'n v. Fanning*,
  642 F.2d 492 (D.C. Cir. 1980) .................................................. 15, 16
*Protect Democracy Project v. U.S. Dep't of,*
  *Def.*, 263 F. Supp. 3d 293 (D.D.C. 2007) ....................................... 33
*Public Util. Comm'r of Or. v. Bonneville Power Admin*,
  767 F.2d 622 (9th Cir. 1985) ......................................................... 18
*Rann v. Chao*,
  154 F. Supp. 2d 61 (D.D.C. 2001) ................................................. 10
*Scolaro v. Dist. of Columbia Bd. of Elections & Ethics*,
  104 F. Supp. 2d 18 (D.D.C. 2000) ................................................. 10
*Sherley v. Sebelius*,
  644 F.3d 388 (D.C. Cir. 2011) ....................................................... 11
*Telecomms Res. & Action Ctr. v. FCC*,
  750 F.2d 70 (D.C. Cir. 1984) ......................................................... 18
*TK Servs., Inc. v. RWD Consulting, LLC*,
  263 F. Supp. 3d 64 (D.D.C. 2017) ........................................... passim
*United Gov't Sec. Officers of Am. Int'l Union v. Service Emps. Int'l Union*,
  646 F. Supp. 2d 91 (D.D.C. 2009) ............................................ 26, 29
*United Steelworkers of Am. v. Am. Mfg. Co.*,
  363 U.S. 564 (1960) ...................................................................... 25
*United Steelworkers of Am. v. Blaw-Know Foundry & Mill Mach., Inc.*,
  319 F. Supp. 636 (W.D. Pa. 1970) ................................................. 25
*Wilson v. USPS*,
  441 F. Supp. 803 (C.D. Cal. 1977) ................................................. 21
*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .......................................................................... 11
*Workers, Dist. Lodge 166, AFL-CIO v. Griffin*,
  590 F. Supp. 2d 171 (D.D.C. 2008) ............................................... 13


**Statutes**

18 U.S.C. § 3061 ................................................................... 4, 5, 27, 28
18 U.S.C. § 3061(b)(1) ................................................................... 14
18 U.S.C. § 3061(c) ................................................................. passim
18 U.S.C. § 3061(c)(1) ....................................................... 14, 28, 30
29 U.S.C. §§ 101 ......................................................................... 22
39 U.S.C. § 201 ............................................................................. 2
39 U.S.C. § 403(b)(1) ..................................................................... 3
39 U.S.C. § 410(a) ........................................................................ 12

39 U.S.C. § 1203 ................................................................................................ 5
39 U.S.C. § 3661 ................................................................................ 16, 17, 19
39 U.S.C. § 3661(b) ........................................................................................ 20
39 U.S.C. § 3662(a) ........................................................................................ 17
39 U.S.C. §§ 3662 .......................................................................................... 17
U.S.C. § 3661(b) ............................................................................................ 16

**INTRODUCTION**

Defendants, the United States Postal Service (the "Postal Service") and Louis DeJoy, in his official capacity as United States Postmaster General, respectfully submit this combined motion to dismiss the complaint (ECF No. 1) ("Complaint") filed by Plaintiff the Postal Police Officers Association ("PPOA") and memorandum of points and authorities in support of Defendants' opposition to Plaintiff's motion for a temporary restraining order and/or a preliminary injunction (ECF No. 7). This case arises from a longstanding dispute between the Postal Service and the union representing Postal Police Officer ("PPOs") concerning the scope of the law enforcement authority of Postal Police. PPOA has moved the Court for a temporary restraining order and/or preliminary injunction to prohibit the Postal Service from implementing an instruction to PPO managers issued in August 2020, requiring pre-approval for utilization of PPOs outside of the confines and surroundings of Postal Service real property. PPOA's motion should be denied, and the Complaint dismissed, for several reasons.

First, although Plaintiff attempts to turn to the last resort of *ultra vires* jurisdiction, relief under the *ultra vires* doctrine requires that an agency "patently misconstrue" a statute or violate an explicit statutory command—implicating the agency's jurisdiction to take such action. Because Plaintiff cannot meet this heightened showing, Plaintiff's *ultra vires* claim fails and injunctive relief is unwarranted. Second, this Court lacks subject matter jurisdiction over PPOA's claim for an injunction pending arbitration because, unlike traditional injunctive relief, a district court's jurisdiction over a labor union's request for an injunction pending arbitration is limited to situations where the court's intervention is necessary to protect the integrity of the arbitration process between the union and management. *See Buffalo Forge Co. v. United Steelworkers of Am.*, 428 U.S. 397, 410 (1976). Plaintiff has failed to show, and cannot show, that the relevant

management directive must be halted now to protect the integrity of the arbitration process or to prevent the union from being deprived of a meaningful remedy through arbitration. Moreover, even if the Court had jurisdiction, an injunction is not warranted under the Supreme Court's jurisprudence concerning injunctive relief in labor disputes and because Plaintiff has not met its burden of showing that equitable factors necessary for injunctive relief weigh in its favor. *See TK Servs., Inc. v. RWD Consulting, LLC*, 263 F. Supp. 3d 64, 71 (D.D.C. 2017). The parties have a longstanding agreement to arbitrate and remedy just these sorts of disputes. There is no jurisdiction and no reason for this Court to intervene in that longstanding, negotiated-for process.

## BACKGROUND

### A. The United States Postal Service

The Postal Reorganization Act of 1970 ("PRA"), created the Postal Service as an "independent establishment of the executive branch of the Government of the United States[.]" 39 U.S.C. § 201. Congress granted the Postal Service broad general "powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." *Id.* § 401(10). The Postal Service employs more than 630,000 employees, operates more than 31,000 Post Offices, and typically processes and delivers more than 450 million pieces of mail, through a network of over 230,000 delivery routes, to nearly 160 million delivery points each day. *See* United States Postal Service, FY2019 Annual Report to Congress, *available at* https://about.usps.com/what/financials/annual-reports/fy2019.pdf (last visited Sept. 29, 2020) at 2. The Postal Service is directed by a Board of Governors, which is comparable to a board of directors of a publicly held corporation. *Id.* at 4. Louis DeJoy is the current Postmaster General of the United States. *See* United States Postal Service, Postal Leadership, *available at* https://about.usps.com/who/leadership/officers/pmg-ceo.htm (last visited Sept. 29, 2020).

Congress charged the Postal Service with the responsibility to "maintain an efficient system of collection, sorting, and delivery of the mail nationwide," 39 U.S.C. § 403(b)(1), and broadly empowered it "to determine the need for post offices . . . facilities and equipment, and to provide such offices, facilities, and equipment as it determines are needed," *id*. § 404(a)(3), to "direct . . . employees . . . in the performance of [their] official duties," *id*. § 1001(e)(1), to "transfer [and] assign . . . employees in positions within the Postal Service," *id*. § 1001(e)(2), and "to determine the methods, means, and personnel by which . . . operations are to be conducted," *id*. § 1001(e)(5).

### B.  The U.S. Postal Inspection Service

The U.S. Postal Inspection Service is the law enforcement arm of the Postal Service.  *See* United States Postal Service, U.S. Postal Inspection Service, *available at* https://about.usps.com/publications/pub260a/pub260a_v03_revision_092019_tech_002.htm (last visited Sept. 29, 2020).  The Postal Inspection Service is comprised of both Postal Inspectors and Postal Police Officers.  The Inspection Service employs approximately 1,280 Postal Inspectors at approximately 190 work sites and approximately 534 Postal Police Officers at approximately 35 work sites. *See* Declaration of Daniel B. Brubaker ("Brubaker Decl."), attached hereto as Exhibit 1, ¶¶ 6-7.  This includes approximately 436 bargaining unit employees represented by the Postal Police Officers Association and 98 supervisory employees.  *Id* ¶ 7.  Postal Inspectors "enforce over 200 federal laws covering crimes that attack or misuse the postal system," and have "investigative jurisdiction in all criminal matters involving the integrity and security of the U.S. Postal Service." *See* United States Postal Service, Postal Inspectors, *available at* https://about.usps.com/publications/pub260a/pub260a_v03_revision_092019_tech_003.htm (last visited Sept. 29, 2020).  Postal Police Officers are "[s]tationed in critical postal facilities across the nation," and "stand on the frontlines in the fight to protect postal employees, customers, and

property."  *See*  United  States  Postal  Service,  Postal  Police  Officers  *available  at*
https://about.usps.com/publications/pub260a/pub260a_v03_revision_092019_tech_007.htm  (last
visited Sept. 29, 2020).  The Postal Service website explains that the presence of Postal Police
Officers "keeps employees free from danger in the workplace and [] customers feeling safe," and,
"if disaster strikes on postal property . . . [Postal Police Officers] are often the first to respond."
*Id.*

   The investigative powers of Postal Service personnel are codified at 18 U.S.C. § 3061, with
Postal Police Officers specifically addressed in subsection (c).  Section 3061 states in full:

(a) Subject to subsection (b) of this section, Postal Inspectors and other agents of
   the United States Postal Service designated by the Board of Governors to
   investigate criminal matters related to the Postal Service and the mails may—

   (1) serve warrants and subpoenas issued under the authority of the United
       States;

   (2) make arrests without warrant for offenses against the United States
       committed in their presence;

   (3) make arrests without warrant for felonies cognizable under the laws of
       the United States if they have reasonable grounds to believe that the
       person to be arrested has committed or is committing such a felony;

   (4) carry firearms; and

   (5) make seizures of property as provided by law.

(b) The powers granted by subsection (a) of this section shall be exercised only—

   (1) in the enforcement of laws regarding property in the custody of the
       Postal Service, property of the Postal Service, the use of the mails, and
       other postal offenses; and

   (2) to the extent authorized by the Attorney General pursuant to agreement
       between the Attorney General and the Postal Service, in the
       enforcement of other laws of the United States, if the Attorney General
       determines that violations of such laws have a detrimental effect upon
       the operations of the Postal Service.

(c)(1) The Postal Service may employ police officers for duty in connection with the protection of property owned or occupied by the Postal Service or under the charge and control of the Postal Service, and persons on that property, including duty in areas outside the property to the extent necessary to protect the property and persons on the property.

(2) With respect to such property, such officers shall have the power to—

      (A) enforce Federal laws and regulations for the protection of persons and property;

      (B) carry firearms; and

      (C) make arrests without a warrant for any offense against the Unite[d] States committed in the presence of the officer or for any felony cognizable under the laws of the United States if the officer has reasonable grounds to believe that the person to be arrested has committed or is committing a felony.

(3) With respect to such property, such officers may have, to such extent as the Postal Service may by regulations prescribe, the power to—

      (A) serve warrants and subpoenas issued under the authority of the United States; and

      (B) conduct investigations, on and off the property in question, of offenses that may have been committed against property owned or occupied by the Postal Service or persons on the property.

(4)(A) As to such property, the Postmaster General may prescribe regulations necessary for the protection and administration of property owned or occupied by the Postal Service and persons on the property. The regulations may include reasonable penalties, within the limits prescribed in subparagraph (B), for violations of the regulations. The regulations shall be posted and remain posted in a conspicuous place on the property.

(B) A person violating a regulation prescribed under this subsection shall be fined under this title, imprisoned for not more than 30 days, or both.

18 U.S.C. § 3061.

### C.  The Postal Police Officers Association

Since the creation of the Postal Service in 1970, the large majority of postal employees have been represented for purposes of collective bargaining by labor organizations. *See* 39 U.S.C.

§ 1203.  The Postal Service has negotiated a series of collective bargaining agreements with its unions, including PPOA, which represents the Postal Service's Postal Police Officers.  *See* Declaration of Janet Peterson ("Peterson Decl."), attached hereto as Exhibit 2, ¶ 4.  Article 15 of the current collective bargaining agreement between the Postal Service and PPOA contains broad grievance procedures that enable PPOA to pursue disputes between the parties related to wages, hours, and conditions of employment.  *See* Peterson Decl., Ex. A at 39-44.  This process culminates in binding arbitration if the parties cannot resolve the grievance.  *Id.* at 45-47.  The collective bargaining agreement with PPOA recognizes the  Postal Service's broad statutory responsibilities and authority.  For example, Article 3 acknowledges the Postal Service "shall have the exclusive right, subject to the provisions of this Agreement and consistent with applicable laws and regulations," to "direct PPOs . . . in the performance of official duties," to "assign . . . PPOs in positions within the Postal Service," and "to determine the methods, means, and personnel by which . . . operations are to be conducted."  *Id.* at 5.  Management has identified the primary duties and responsibilities of PPOs in the PPO job description, including "patrol duty, as assigned, on foot or by motor vehicle within jurisdictional authority in connection with property owned or occupied by the Postal Service."  Peterson Decl. ¶ 14.

### D.  The Law Enforcement Authority of Postal Police Officers

For the past several years, there has been a dispute between the Postal Service and PPOA regarding the scope of the authority of Postal Police Officers.  Earlier this year, in a February 2020 arbitration, the parties confirmed their opposing positions on the appropriate interpretation of 18 U.S.C. § 3061(c), *see* Peterson Decl. at Ex. F (PPOA's opening statement included the argument that Section 3061 supports a reading that "property" includes chattel, while management responded through its witness that "property" in that statute is "a reference to real property that's

owned or occupied by the Service or under the charge and control of the Service and persons on that property").

And PPOA is well-aware of the Postal Service's efforts to curtail PPO activities off property in recent years, consistent with the agency's reading of Section 3061. *See, e.g.*, Postal Police Officers Association, Union Update (March 31, 2018), *available at* https://www.ppoa.us/union-update-march-31st-2018 (last visited Sept. 29, 2020) ("Day 3: . . . "[T]he rumors that we've all been hearing are, for the most part, true.  PPOs are being pulled back from street patrols, not entirely, but—according to the Agency—the primary mission of the postal police is the 1970s-style 'facility security'—and street patrols are a 'secondary function' that will only take place if resources allow (using the Agency 2014 arbitration playbook—the Agency having said that off-property activity was 'mission creep.'"[)]).  A few months later, on July 26, 2018, then-PPOA President James Bjork sent Postal Service Labor Relations Specialist Janet Peterson an email in response to data demonstrating a significant decrease in the off-property use of PPOs.  President Bjork, noting that off-property PPO use had been reduced by "nearly 60%" in recent years, wrote "I believe there exists a concerted effort to curtail work and suppress PPO duties as the parties enter into mediation and possible Interest Arbitration."  *See* Peterson Decl. at Ex. E.  The issue arose again during a November 2019 national labor management meeting between the parties.  *See* Peterson Decl. ¶ 17.  In Ms. Peterson's notes summarizing the meeting, which she shared with the union on January 16, 2020, she explains that the Postal Service reiterated its position to the Union that PPO jurisdiction is tied to real property, including by conveying that "[t]here may be duties off property (such as traditional duties like escorts of mail or remittance), but those do not come with jurisdiction."  *Id.* at Ex. G.

Most recently, on August 25, 2020, the U.S. Postal Inspection Service issued a Management Communication regarding Postal Police Utilization, which clarified that pursuant to 18 U.S.C. § 3061(c), Postal Police Officers may exercise certain law enforcement authority "on real property owned, occupied, or otherwise controlled by the Postal Service; or in the immediate areas outside of postal owned real property (sidewalks and walkways) to the extent necessary to protect the property and people on postal owned real property."  ECF No. 7-2 at 308.  The communication stated that Postal Police Officers "may not exercise this authority in contexts unrelated to Postal Service premises," and advised that "[e]ffective immediately any off property utilization of PPOs requires prior approval[.]"  *Id.*  The communication further advised that prior "approval is not required for PPOs to travel off premises in order to get to a duty assignment or incident at another Postal Service location," but that "during this travel [PPOs] are not to be placed into situations in which it would be reasonably likely that they would be compelled to exercise law enforcement activity (e.g., carrier protection patrols, community policing patrols, and fishing patrols)."  *Id.*[1]

### E.  Procedural History

On September 8, 2020, PPOA filed a national-level grievance contending that the issuance of the August 25, 2020 Management Communication violated the terms of the collective bargaining agreement between the Postal Service and PPOA.  Compl. ¶ 1.  Unless the parties are able to resolve the dispute, an arbitration before a neutral arbitrator will occur.  *Id.*  Plaintiff filed this lawsuit on September 14, 2020, asserting: (1) a claim for an injunction pending arbitration;

---

[1] Plaintiff suggests that the August 2020 communication was issued in retaliation for arguments made during a PPOA interest-arbitration hearing, or as a result of racial discrimination.  *See* ECF No. 7 at 26-28.  Plaintiff's claims are vague and unsubstantiated.

and (2) a claim that Defendants' actions were *ultra vires*.  *Id.* ¶¶ 48-62.  Plaintiff contends that the position set forth in the August 25 communication concerning the law enforcement authority of Postal Police Officers constituted a "sudden change" in agency policy which is contrary to the language of 18 U.S.C. § 3061(c) and in violation of the parties' collective bargaining agreement. *Id.* ¶ 9.  Plaintiff further asserts that the agency's position "puts PPOs and other postal employees in increased danger and increases the likelihood of criminal activity against Postal Service employees and the U.S. mail."  *Id.*  Plaintiff seeks, among other relief, that the Court "[i]ssue an injunction, either permanently or until an arbitration award issues, that requires the Defendants to rescind the August 25, 2020 National Communication and that otherwise enjoins the Postal Service to recognize and acknowledge the jurisdictional authority of Postal Police Officers to exercise law-enforcement authority with respect to U.S. mail and other postal property[.]"  *Id.* at 15.

On September 23, 2020, Plaintiff filed a motion for a temporary restraining order and/or preliminary injunction that: (1) requires Defendants to rescind the August 25, 2020 Management Communication; and (2) requires Defendants to "recognize and acknowledge Postal Police Officers' statutory jurisdictional authority to protect the U.S. Mail and other postal property away from postal real estate."  ECF No. 7 at 1.  PPOA seeks the following injunctive relief: (1) "an injunction based on the Postal Service's *ultra vires* action to constrict PPO jurisdiction"; and (2) "in the alternative, PPOA seeks an injunction pending arbitration to prevent irreparable harm to the bargaining unit and the union and protect the integrity of the labor-arbitration process."  *Id.* at 29.

## LEGAL STANDARDS

### A.  Dismissal Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[T]he plaintiff bears the burden of establishing that the court has jurisdiction." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003). When reviewing a motion to dismiss on jurisdictional grounds, the Court need not limit itself to the allegations of the complaint, and "may consider such materials outside the pleadings as it deems appropriate to resolve the question of whether it has jurisdiction in the case. *Scolaro v. Dist. of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (internal citation omitted).

### B.  Dismissal Pursuant to Rule 12(b)(6) for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In weighing a motion to dismiss, a court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997).

### C. Issuance of a Temporary Restraining Order or Preliminary Injunction

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "An application for a [temporary restraining order] is analyzed using factors applicable to preliminary injunctive relief." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 81 (D.D.C. 2018). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (internal quotation marks omitted). "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (internal quotation marks omitted).

Moreover, in the event that "parties have agreed to arbitrate a dispute, a court may [only] issue an injunction if, in addition to the usual equitable concerns, the integrity of the arbitration process would be threatened absent interim relief." *TK Servs., Inc. v. RWD Consulting, LLC,* 263 F. Supp. 3d 64, 71 (D.D.C. 2017) (quoting *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 372 F. Supp. 2d 83, 90-91 (D.D.C. 2005)). Such "an injunction in aid of arbitration is appropriate . . . *only when* the actual or threatened harm to the aggrieved party amounts to a frustration or vitiation of arbitration," such that a favorable decision by an arbitrator "would be but an empty victory." *Am. Postal Workers Union*, 372 F. Supp. 2d at 91 (emphasis added). "The arbitral process, however, is not rendered meaningless by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is

irremediable." *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 419 F. Supp. 3d 127, 134 (D.D.C. 2019) (internal quotation marks, ellipses, and brackets omitted).

## ARGUMENT

### A. Plaintiff's *Ultra Vires* Claim Fails

Although the D.C. Circuit has found that "non-statutory" review is available for certain Postal Service decisions, such review "is quite narrow" and "available only to determine what the agency has acted '*ultra vires*'—that is, whether it has 'exceeded its statutory authority.'" *Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 307 (D.C. Cir. 2014) (quoting *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1173 (D.C. Cir. 2003)); *see also Nyunt v. Broadcasting Bd. of Govs.*, 589 F.3d 445, 449 (D.C. Cir. 2009) (characterizing *ultra vires* review as "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds").[2] "Courts will exercise their power to review alleged *ultra vires* agency action when an agency 'patently misconstrues a statute, disregards a specific and unambiguous statutory directive, or violates a specific command of a statute.'" *Hunter v. FERC*, 569 F. Supp. 2d 12, 16 (D.D.C. 2008) (quoting *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988)). The circumstances here do not warrant this Court invoking its inherent power to review alleged *ultra vires* agency actions.

### 1. 18 U.S.C. § 3061(c)

PPOA alleges that "Congress intended in 18 U.S.C. § 3061(c) that Postal Police Officers have authority to protect the mail and other postal property away from postal real estate," Compl. ¶ 56, and that "[b]y unilaterally restricting [P]ostal [P]olice [O]fficers to postal real estate and

---

[2] The Postal Service is exempt from review under the Administrative Procedure Act. *See Mittleman*, 757 F.3d at 305; 39 U.S.C. § 410(a).

decreeing that they lack law-enforcement authority away from that real estate, Defendants are acting in excess of their statutory authority by defying Congress' direction that Postal Police Officers have law-enforcement authority to protect the mails and other postal property away from postal real estate," *id.* ¶ 60.

A plaintiff "seeking non-statutory review must show that the agency has acted in excess of its delegated powers and contrary to a *specific* prohibition that is *clear and mandatory*." *Int'l Assn's of Machinists & Aero. Workers, Dist. Lodge 166, AFL-CIO v. Griffin*, 590 F. Supp. 2d 171, 176 (D.D.C. 2008) (citing *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256, 1263 (D.C. Cir. 2006)). "Under this standard, a plaintiff must . . . identify an agency error 'so extreme that one may view it as jurisdictional or nearly so.'" *Int'l Assn's of Machinists & Aero. Workers*, 590 F. Supp. 2d at 176 (quoting *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988)). "The D.C. Circuit has repeatedly held that non-statutory review is inappropriate where a plaintiff fails to identify a 'clear and mandatory' obligation in a specific statute or regulation." *Int'l Assn's of Machinists & Aero. Workers*, 590 F. Supp. 2d at 177 (collecting cases). "A statutory provision is 'clear and mandatory' when it has only one unambiguous interpretation." *Nat'l Ass'n of Postal Supervisors v. USPS*, No. 18-cv-2236 (RCL), 2020 WL 4039177, at *3 (D.D.C. July 17, 2020) (citing *Nat'l Air Traffic Controllers*, 437 F.3d at 1264).

Plaintiff asserts that 18 U.S.C. § 3061(c) is clear that: (1) "where the Postal Service chooses to employ Postal Police Officers, **Congress** has determined the scope of those officers' legal authority"—*i.e.*, authority over "property"; and (2) "the term 'property' must be construed to include chattel property as well as real property." ECF No. 7 at 31. Thus, argues Plaintiff, the August 25, 2020 Management Communication is "*ultra vires* because it defies the plain language

of the statute and is unreasonable." *Id.* The plain text of Section 3061(c), however, belies Plaintiff's argument.

Section 3061(c)(1) states:

The Postal Service *may* employ police officers for duty *in connection with the protection of property owned or occupied by the Postal Service or under the charge and control of the Postal Service*, and persons *on that property*, including duty in *areas outside the property* to the extent necessary to protect the property and persons on the property.

18 U.S.C. § 3061(c)(1) (emphasis added).

At the outset, the language of the statute is permissive—it states that the Postal Service "may" employ police officers—in other words, the statute leaves to the discretion of the Postal Service whether to even employ Postal Police Officers in the first instance. With respect to the meaning of "property," the term is not defined in the statute, but the context of 18 U.S.C. § 3061(c) makes clear that, as used in that subsection, "property" means real property—*i.e.*, physical premises owned or occupied by the Postal Service. For instance, the phrases "persons on that property" and "areas outside the property," 18 U.S.C. § 3061(c)(1), would not make sense if "property" included chattel such as pieces of mail in addition to real property. *See also id.* § 3061(c)(4)(A) ("As to such property, the Postmaster General may prescribe regulations necessary for the protection and administration of *property owned or occupied by* the Postal Service and persons *on the property*.") (emphasis added). The statutory language regarding the law-enforcement authority of Postal Police Officers set forth in 18 U.S.C. § 3061(c) is in contrast with the language used to convey broader powers on Postal Inspectors, who may enforce laws "regarding property *in the custody of* the Postal Service." 18 U.S.C. § 3061(b)(1). No such power is given to Postal Police Officers in Section 3061(c), and their jurisdiction is, as a result, narrower. In sum, the most natural interpretation of "property" as used in 18 U.S.C. § 3061(c) is "real property," and such interpretation plainly does not "patently misconstrue" Section 3061(c).

Under the circumstances, Plaintiff cannot state a claim that the August 25, 2020 Management Communication was *ultra vires*, as Plaintiff cannot demonstrate that Section 3061(c) "mandate[s] a determination" that the term property as used in Section 3061(c) refers to both real property *and* chattel. *Cf. Physicians Nat. House Staff Ass'n v. Fanning*, 642 F.2d 492, 496-97 (D.C. Cir. 1980) (rejecting argument that the National Labor Relations Board violated a specific command of the National Labor Relations Act in determining that certain individuals were not "employees" within the meaning of the statute and observing that the statute "d[id] not define the term employee"). Indeed, the context in which the term appears reflects quite the opposite,[3] and even if the Court were to find the language ambiguous and subject to multiple interpretations, such finding would likewise be fatal to Plaintiff's *ultra vires* claim. *See Nat'l Air Traffic Controllers*, 437 F.3d at 1264 ("Both the FAA and the Unions have raised compelling arguments regarding the proper interpretation of the disputed statutory provisions. It is precisely because of this that we cannot conclude that the Panel's decisions in this case contravened a clear and specific statutory mandate[.]").

Plaintiff suggests that legislative history mentioning that Postal Police Officers "escort[ed] high-value mail shipments," compels that conclusion that there is only one clear reading of the text of the statute. ECF No. 7 at 35. The cited legislative history, however, "stop[s] short of showing

---

[3] Given that the language of 18 U.S.C. § 3061(c) makes clear that the law-enforcement authority of Postal Police Officers is tied to Postal Service real property, Plaintiff likewise cannot demonstrate any injury in fact sufficient to meet the requirements of Article III standing—an independent reason for dismissal of Plaintiff's claim under Rule 12(b)(1)—because Plaintiff cannot show that the August 2020 Management Communication constituted an invasion of any "legally protected interest." *See Jeffries v. Volume Servs. Am.*, 928 F.3d 1059, 1063 (D.C. Cir. 2019) ("An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'") (quoting *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992)).

. . . that [Congress] thought the [statute] required" that "property" as used in Section 3061(c) mean chattel property in addition to real property. *Physicians Nat. House Staff Ass'n v. Fanning*, 642 F.2d at 498. Nor does the fact that courts have used the term "property" in referring to items other than real property change the analysis. *See* ECF No. 7 at 35-36. The Court need look no further than the express statutory language of 18 U.S.C. § 3061(c) to determine that the section refers only to real property.

Because PPOA has not shown that the Postal Service's conduct violates a clear and mandatory directive or patently misconstrues the text of Section 3061(c), Plaintiff has not sufficiently pleaded that the Postal Service acted *ultra vires*. Plaintiff's claim is therefore subject to dismissal under Rule 12(b)(6), and, for the same reason, Plaintiff cannot obtain a temporary restraining order or injunctive relief.

### 2. 39 U.S.C. § 3661

Although not alleged in the Complaint, Plaintiff's motion for a temporary restraining order and/or preliminary injunction asserts that "the nationwide restriction of longstanding PPO authority, and restriction of duties, without approval by the Postal Regulatory Commission seems to violate 39 U.S.C. § 3661," and that "[t]he failure to obtain the required review is an *ultra vires* act that may be enjoined[.]" ECF No. 7 at 31 & 34 n.6. Section 3661(b) states: "When the Postal Service determines that there should be a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis, it shall submit a proposal, within a reasonable timeframe prior to the effective date of such proposal, to the Postal Regulatory Commission requesting an advisory opinion on the change." 39 U.S.C. § 3661(b). Even if Plaintiff were to seek to amend the Complaint to include this additional claim, any such effort would be futile.

As a threshold matter, statutory text and decades of precedent make clear that the Postal Regulatory Commission has exclusive jurisdiction over complaints relating to service issues, including the failure of the Postal Service to first seek an advisory opinion from that body for a nationwide change in service, with the right of appeal to the D.C. Circuit if the complainant is dissatisfied.  District courts play no role in adjudicating such disputes and this Court therefore lacks subject matter jurisdiction over any such claim, were Plaintiff to bring one.  But even if Plaintiff could somehow overcome this hurdle, the Postal Service was not required to seek an advisory opinion prior to issuing the August 2020 Management Communication.

In Section 3662, Congress specified that any person "who believes the Postal Service is not operating in conformance with the requirements of various provisions, including "*this chapter* [i.e., Chapter 36 of Title 39, which includes 39 U.S.C. § 3661] (or any regulations promulgated under any of those provisions) may lodge a complaint with the Postal Regulatory Commission."   39 U.S.C. § 3662(a) (emphasis added).  If that person is dissatisfied with the Commission's ruling, they may petition for review in the D.C. Circuit.  *Id.* § 3663.  Courts have repeatedly held that 39 U.S.C. §§ 3662 and 3663 constitute the exclusive jurisdictional remedy for complaints about postal services that fall within the statutory provisions specifically identified in section 3662—and as discussed above, that includes a claim that the Postal Service is not complying with section 3661. *See, e.g.*, *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 986 (Fed. Cir. 2013) (Postal Regulatory Commission has "exclusive jurisdiction . . . over claims enumerated in § 3662"); *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799-800 (8th Cir. 2006) ("In this case, Congress removed the district courts' jurisdiction over claims regarding postal rates and services.  It did so by enacting 39 U.S.C. § 3662."); *Bovard v. U.S. Post Office*, 47 F.3d 1178 (10th Cir. 1995) (earlier version of 39 U.S.C. § 3662 "makes clear that a postal customer's remedy for unsatisfactory service [which was

identified in section 3662] lies with the Postal Rate Commission," and "[a]ccordingly, the district court was without jurisdiction to review this claim").

This line of precedent has developed for good reason. "Generally, when Congress creates procedures 'designed to permit agency expertise to be brought to bear on particular problems' those procedures 'are to be exclusive.'" *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 589 (2010) (quoting *Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S.411, 420 (1995)). "It is well settled that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive' . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecomms Res. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984); *see also Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 186 (D.C. Cir. 2017) ("[W]here 'a special statutory review procedure [exists], it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'") (quoting *Media Access Project v. FCC*, 884 F.2d 1063, 1077 (D.C. Cir. 1989)); *Public Util. Comm'r of Or. v. Bonneville Power Admin*, 767 F.2d 622, 627 (9th Cir. 1985) ("[J]urisdiction over a specific class of claims which Congress has committed to the court of appeals generally is exclusive, even in the absence of an express statutory command of exclusiveness."). This principle applies particularly in situations where there are multiple layers of review, *i.e.*, review first to an agency, and then to the federal courts of appeals. *See, In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) ("The multiple layers of review evince Congress's intent to direct challenges . . . to the avenues Congress created."). Here, Congress has created just such a channeling scheme: complaints within the ambit of section 3662 (including complaints that the Postal Service has not complied with section 3661) go first to the Commission, an agency with

18

deep expertise in postal matters, and then to the D.C. Circuit. *See* 39 U.S.C. §§ 3661, 3662. Under such circumstances, this court lacks subject matter jurisdiction over any such claim—again, were Plaintiff to bring one.[4]

Plaintiff fails to acknowledge Section 3662's channeling of review to the Postal Regulatory Commission and then to the D.C. Circuit. Instead, Plaintiff seeks review under this Court's very limited *ultra vires* review doctrine. But Plaintiff cannot satisfy *ultra vires* review, because in order to justify relief under the *ultra vires* doctrine "a plaintiff must show, *first* that the agency has acted in excess of its delegated powers and contrary to a specific prohibition and, *second*, that barring review by the district court would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights." *Nat'l Air Traffic Controllers Ass'n*, 437 F.3d at 1258 (internal citations and quotation marks omitted). Here, most obviously, Plaintiff fails at the second condition: they have a "meaningful and adequate means of vindicating [their] statutory rights," *Board of Governors of Fed. Reserve Sys. v. MCorp Financial, Inc*, 502 U.S. 32, 43 (1991)—they can file a complaint to the Postal Regulatory Commission, with judicial review if it remains

---

[4] The Supreme Court has recognized that district court jurisdiction may not be implicitly precluded if three factors are met: (1) "a finding of preclusion could foreclose all meaningful judicial review," (2) if the suit is "wholly collateral to a statute's review provisions," and (3) "if the claims are 'outside the agency's expertise." *Jarkesy v. SEC*, 803 F.3d 9, 17 (D.C. Cir. 2015) (quoting *Free Enterprise*, 561 U.S. at 489-90. None of these factors is met here. There is meaningful judicial review of a final Postal Regulatory Commission order in the D.C. Circuit. Nor does it matter that the Postal Regulatory Commission cannot provide "immediate relief," as the fact that there may *eventually* be relief is sufficient as a matter of law. *See Am. Fed'n of Gov't Employees, AFL-CIO v. Trump*, 929 F.3d 748, 755-56 (2019) ("Here, [the Supreme Court] instructs that the [plaintiffs] are not necessarily entitled to raise a pre-implementation challenge in the district court, and that Congress may require them to litigate their claims solely through the statutory scheme, so long as they can *eventually* obtain review and relief.") (emphasis added) Moreover, the suit is not collateral to the statute's review provisions, but falls within their explicit text, and involves a function committed to the agency's expertise.

unsatisfied in the D.C. Circuit.  Their failure to even attempt to do so is fatal to their claim.  *See id.* (appeal to agency, followed by review in the courts of appeals, constitutes a meaningful and adequate means of vindicating statutory rights).  The path for such review may not be the one that Plaintiff would prefer, but that fact is insufficient to establish *ultra vires* jurisdiction.

Although this Court need not reach it in light of the express channeling of judicial review to the D.C. Circuit, any claim would also fail under the first prong of the *ultra vires* analysis, because PPOA cannot show that the Postal Service has violated Section 3661(b).  That provision requires the Postal Service to request an advisory opinion whenever it "determines that there should be a change in the nature of postal services which will generally affect service on a nationwide or substantially nationwide basis. 39 U.S.C. § 3661(b). The leading case interpreting this statute is *Buchanan v. U.S. Postal Serv.*, 508 F.2d 259 (5th Cir. 1975).  There, the Fifth Circuit recognized that "Congress intended 3661 to apply to only a specified class of decisions," and that "Postal management was left with broad decision-making power, subject to 3661's requirements for specified decisions."  *Id.* at 262; *see also id.* ("The language of 3661 indicates the limited scope of application."); *see also id.* at 263-64 (recognizing "a policy of broad management power and an unexpansive interpretation of 3661").  Accordingly, three factors must be satisfied before Section 3661(b) comes into play.   "First, there must be a 'change.' This implies that a quantitative determination is necessary." *Id.* at 262.  In other words, "[t]here must be some meaningful impact on service . . .[m]inor alterations which have a minimal effect on the general class of postal users do not fall within 3661." *Id.*  "Second, the change must be 'in the nature of postal services.'  This involves a qualitative examination of the manner in which postal services available to the user will be altered." *Id.* at 262-63.  "Third, the change must affect service 'on a nationwide or substantially nationwide basis.'  A broad geographical area must be involved." *Id.* at 263.  In drawing these

lines, courts have made a "distinction between Postal Service managerial decisions and Postal Service decisions which affect the public and give rise to an opportunity to be heard." *Wilson v. USPS*, 441 F. Supp. 803, 806 (C.D. Cal. 1977).

The Commission has noted that a "change in the nature of postal services broadly can be defined as changes to a customer's ability to access essential postal services that require a visit to a postal retail facility."[5]  The August 2020 Management Communication does not implicate any such change.  At base, Plaintiff's claim emerges at the intersection of two lines of doctrine: the requirement that Section 3661 be narrowly interpreted, in order to preserve the Postal Service's "broad management power," *see Buchanan*, 508 F.2d at 263-64, and the *ultra vires* doctrine, which requires that any error be clear and unambiguous.  The operational activities that Plaintiff seeks to challenge here cannot meet this set of unequivocal requirements.  Indeed, were it otherwise, the *ultra vires* doctrine would swallow Congress's express preclusion of judicial review of these types of claims in district court.  Almost any sort of operational or management initiatives that could have an impact on Postal Service operations would fall within the ambit of Section 3661—exactly the scenario that Congress intended to avoid.  *See id.*

### B.  This Court Lacks Jurisdiction to Issue an Injunction Pending Arbitration

Plaintiff contends that the Postal Service "breached the [parties' collective bargaining agreement] by unilaterally abandoning almost 50 years of precedent and declaring on August 25, 2020 that Postal Police Officers have no law-enforcement authority to protect the integrity of the mail and the safety of postal employees away from the confines of [Postal Service] real estate."

---

[5] Advisory Opinion Concerning the Process for Evaluating Closing Stations and Branches, Docket No.   N2009-1   (Mar.   10,   2010),   at   11, *available at* https://www.prc.gov/docs/67/67174/Advisory_Opinion_031010.pdf (last visited Sept. 30, 2020).

Compl. ¶ 50.  This is the essence of a contractual claim, and under Supreme Court precedent, a district court lacks jurisdiction to enjoin an alleged breach of an agreement in the context of a labor dispute where injunctive relief is not necessary to preserve the parties' ability to arbitrate the dispute.  *See Buffalo Forge*, 428 U.S. at 407, 409.  This Court accordingly lacks jurisdiction to issue the requested injunctive relief, and Plaintiff's claim for an injunction pending arbitration should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See Nat'l Ass'n of Letter Carriers*, 419 F. Supp. 3d at 132 ("The Court's analysis begins and ends with jurisdiction, which does not exist here.").

The anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. §§ 101, *et seq.*, provide that "[n]o court of the United States . . . shall have *jurisdiction* to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter."  *Id.* § 101 (emphasis added).  In *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970), the Supreme Court recognized a narrow exception to the anti-injunction rule where judicial intervention is essential to effectuate the parties' agreement to arbitrate.  In that case, a union agreed in its collective bargaining agreement to resolve labor disputes by arbitration.  *Id.* at 238.  When the union called a strike instead of submitting to arbitration, the Court allowed injunctive relief to restrain the strike because such intervention was necessary to enforce the union's agreement to submit disputes to arbitration. *Id.* at 254-55.  The Court cautioned that its holding was a "narrow one."  *Id.* at 253.

In *Buffalo Forge*, the Supreme Court reiterated that the *Boys Markets* exception is limited and that injunctions to prevent violations of labor agreements are inappropriate absent a threat to the arbitral process itself.  *See* 428 U.S. at 409.  The Court observed that, "aside from the enforcement of the arbitration provisions of [labor] contracts, within the limits permitted by *Boys Markets*, the

Court has never indicated that the courts may enjoin actual or threatened contract violations despite the Norris-LaGuardia Act." *Id.* In sum, "the Court emphasized the narrow application of the *Boys Markets* exception, concluding that the justification for such an injunction is not to *remedy* a breach of the collective-bargaining agreement, but rather to hold the parties to their agreement to arbitrate." *Nat'l Ass'n of Letter Carriers*, 419 F. Supp. 3d at 133 (citing *Buffalo Forge*, 428 U.S. at 407-409).

Although *Boys Markets* and *Buffalo Forge* both arose in the context of an employer seeking to enjoin a union from evading arbitration, courts have consistently held that the standard also applies in the reverse situation, where a union seeks an injunction when necessary to protect the integrity of the arbitral process. *See, e.g., Niagara Hooker Emps. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1376-78 (2d Cir. 1991) (explaining that "*Boys Markets/Buffalo Forge* exception" applies "to injunctions against employers," and agreeing with "the majority of circuits" holding that "a union may obtain a *status quo* injunction against an employer when the employer's action has the effect of frustrating the arbitral process, or rendering it a hollow formality") (internal citation and quotation marks omitted); *Indep. Oil & Chem. Workers of Quincy, Inc. v. Proctor & Gamble Mfg. Co.*, 864 F.2d 927, 929-31 & n.2 (1st Cir. 1988) (collecting cases holding that injunctive relief is available to prevent an action that "would render the outcome of any arbitration which might follow meaningless"); *Aluminum Workers Int'l Union v. Consol. Aluminum Corp.*, 696 F.2d 437, 441-42 (6th Cir. 1982) (collecting cases). As explained below, however, PPOA cannot meet this standard.

As an initial matter, it is clear that the relevant contractual dispute—whether the Postal Service violated the terms of the collective bargaining agreement—is arbitrable. *See* Compl. ¶ 1 (acknowledging that the dispute will, if unresolved through the grievance process, be subject to an

arbitration before a neutral arbitrator.).   Thus, the anti-injunction provisions of the Norris-LaGuardia Act apply unless an injunction is "necessary to prevent arbitration from being rendered a meaningless ritual."  *Niagara Hooker*, 935 F.2d at 1377 (internal citation and quotation marks omitted).

Here, an arbitrator can determine whether the August 2020 Management Communication violated the terms of the parties' collective bargaining agreement, and, as such, arbitration would not be a hollow formality.  This case is markedly distinct from those in which courts have found that the arbitration process would be vitiated absent judicial intervention.  For example, in *Lever Brothers Co. v. International Chemical Workers Union*, 554 F.2d 115, 122 (4th Cir. 1976), the Fourth Circuit upheld a preliminary injunction pending arbitration where an employer intended to permanently close a plant in Maryland and transfer those operations to a facility in Indiana prior to the completion of arbitration.  The court concluded that an injunction was necessary because otherwise, even if the union were to prevail at arbitration, it "would undoubtedly have been but an empty victory."  *Id.* (internal citations omitted); *see also Local Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Panoramic Corp.*, 668 F.2d 276, 286 (7th Cir. 1981) (were the union to prevail at arbitration, sale of corporate assets "would have presented the arbitrator with a fait accompli, leaving him without any real power to award an adequate remedy in the event that the Union's claim was sustained"); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 372 F. Supp. 2d 83, 91 (D.D.C. 2005) (failure to issue injunction "would result in the dispute being arbitrated only after the USPS's authority to authorize voluntary early retirement had already expired").  The facts of this case are entirely unlike those in *Lever Brothers*, in which failure to issue an injunction would have left union members with absolutely no hope of redress because available remedies would be legally or practically foreclosed by the completion of

arbitration.  *See also Nat'l Ass'n of Letter Carriers*, 419 F. Supp. 3d at 136 (observing that commentators have noted that "very few employer actions would frustrate arbitration in the sense of rendering it a nullity" and citing as examples situations involving plant relocations and shutdowns involving permanent job loss).

While courts have in rare cases intervened even where a potential harm did not threaten arbitration, those cases have been limited to extreme circumstances, such as where the absence of an injunction presented "*severe* safety risks[.]"  *Id.* at 137 (referencing *United Steelworkers of Am. v. Blaw-Know Foundry & Mill Mach., Inc.*, 319 F. Supp. 636 (W.D. Pa. 1970), in which a court enjoined a metal foundry's reduction of workers staffed to operate an open-hearth furnace because it found that a reduced crew might not be able to contain molten steel seeping from the furnace).  This is not one of those rare cases.  *See infra* Section C.2.  As discussed in more detail *infra*, any public safety risks that Plaintiff contends are implicated by the August 2020 Management Communication are speculative and unsubstantiated.  Here, PPOA's "allegations of irremediable harms do not merit judicial intervention."  *Nat'l Ass'n of Letter Carriers*, 419 F. Supp. 3d at 137.

In seeking a preliminary injunction, Plaintiff asks this Court to reach well beyond the narrow exception to Norris-LaGuardia that the Supreme Court established in *Boys Markets*.  At bottom, Plaintiff's Complaint presents a classic disagreement about how to interpret a contract.  The parties have bargained for an arbitrator, not a federal court, to resolve that dispute and, if appropriate, decide the remedy.  *See United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567-68 (1960) (it is "the arbitrator's judgment . . . that was bargained for").  Plaintiff has already filed a grievance on this very topic.  *See* Compl. ¶ 1.  Neither Plaintiff's Complaint nor its motion for a temporary restraining order and/or preliminary injunction demonstrate that an arbitration under the circumstance would be a meaningless ritual.  Because injunctive relief is not necessary to preserve

the arbitral process, the Court lacks jurisdiction to grant a temporary restraining order or a preliminary injunction.  As such, the Court should dismiss Plaintiff's claim for an injunction pending arbitration pursuant to Rule 12(b)(1), and deny Plaintiff's motion for a temporary restraining order and/or preliminary injunction.

### C.  In Any Event, Plaintiff Has Not Shown Entitlement to Injunctive Relief

Even if Plaintiff were to demonstrate that the August 2020 Management Communication threatens to frustrate the arbitration process itself, it must still contend with the remaining equitable concerns surrounding preliminary injunctive relief.  Here, Plaintiff has not established the necessary prerequisites for the issuance of the "extraordinary and drastic remedy," *United Gov't Sec. Officers of Am. Int'l Union v. Service Emps. Int'l Union*, 646 F. Supp. 2d 91, 93 (D.D.C. 2009), of a temporary restraining order or a preliminary injunction.

#### 1.  Plaintiff Has Not Shown a Likelihood of Success on the Merits

When analyzing whether the party seeking a preliminary injunction pending arbitration has a likelihood of success on the merits, courts generally ask whether the underlying dispute is an arbitrable controversy.  *Int'l Bhd. of Teamsters Local Union 639 v. Airgas, Inc.*, 885 F.3d 230, 234 (4th Cir. 2018) ("whether the parties' dispute is subject to arbitration"); *Nat'l Ass'n of Gov't Emps., Inc. v. Nat'l Emergency Med. Servs. Ass'n, Inc.*, 969 F. Supp. 2d 59, 71 (D. Mass. 2013) ("[C]ourts have held that the party moving for a preliminary injunction in the labor context "need only establish that the position he will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor."); *Nat'l Post Office Mail Handlers v. U.S. Postal Serv.*, Civ. A. No. 78-0068, 1978 WL 14027, at *4 (D. Neb. Apr. 13, 1978) (test for likelihood of success on the merits is only whether "union has raised sufficiently serious questions on the merits to present an arbitrable controversy").  For purposes of this motion only, the Postal Service agrees that the present dispute is subject to arbitration, but PPOA is unlikely to prevail on the merits of

the underlying dispute in any event that, as Plaintiff contends, the Postal Service violated Articles 5, 6, 14, and 19 of the parties' collective bargaining agreement. *See* ECF No. 7 at 37.

With respect to Article 5 and the prohibition on unilateral action, Postal Service management has the ability, pursuant to Article 3, to assign Postal Police Officers as it sees fit, regardless of what statutory authority they may possess. Thus, PPOA's focus on the interpretation of 18 U.S.C. § 3061 is misplaced. Moreover, the August 2020 Management Communication did not constitute unilateral action; it was rather committing to writing a directive that had been in place (albeit not uniformly followed) for years. Thus, the time for PPOA to claim unilateral action was years ago and the August 2020 Management Communication did not constitute a sudden departure as Plaintiff contends. Similarly, Plaintiff's complaint about lack of advance notice, *id.* at 39, is meritless, as the union has known for years that management sought to restrict PPO duties to real property, consistent with the Postal Service's interpretation of 18 USC § 3061.

Regarding Article 6 and PPO rights and responsibilities, PPOA claims that PPOs cannot carry out their duties "consciously and effectively," because their jurisdiction is limited, but provides no further explanation. *Id.* at 40. Similarly, with respect to Article 14, concerning the health and safety of the PPO workforce, Plaintiff's only support for their argument is the conclusory statement that the August 2020 Management Communication "creates risk of physical harm to PPOs because it limits their ability to react to and neutralize threats while away from postal real estate." *Id.* There is simply no indication that PPO working conditions are less safe as a result of the communication. In fact, if anything, PPOs are arguably safer by not engaging with threats away from postal real property.

Finally, with respect to the alleged breach of Article 19, concerning the Postal Service's authority to change handbooks, manuals, and other published regulations that affect working

conditions or conflict with the collective bargaining agreement, PPOA is unlikely to succeed because Article 19 does not apply—no notice of the directive was required because the communication was simply an effort to memorialize an oral directive that had been issued repeatedly over the past few years and create a process for a manager to ask for an exception.  If PPOA believed Article 19 notice was required, it should have filed its grievance much earlier.  PPOA claims that the written directive is not "fair, reasonable, reasonable, or equitable" as required by Article 19 because PPOs are confused about what the new boundaries of their law enforcement duties are, *id.* at 39, but there is no evidence that PPOs are being disciplined or otherwise adversely impacted for misreading physical boundary lines.  Moreover, as noted *supra*, Congress anticipated this issue in enacting 18 U.S.C. § 3061 and extending PPO authority to the curtilage of Postal Service property.  *See* 18 U.S.C. § 3061(c)(1) (Postal Police Officers' duty may extend to "areas outside the property to the extent necessary to protect the property or persons on the property").  Similarly, PPOA's argument that the directive is "unfair" because "it denies PPOs the essential legal protection to carry out their law-enforcement duties," ECF No. 39, misses the mark.  Congress has granted the Postal Service broad general powers to oversee its operations— indeed, the permissive language of Section 3061 does not require the Postal Service to employ Postal Police Officers at all.  That Plaintiff feels that management's belief regarding the scope of Postal Service statutory authority with respect to the employment of Postal Police Officers is "unfair" does not constitute a breach of the collective bargaining agreement.

    2.  <u>Plaintiff Has Not Shown That It Will Suffer Irreparable Harm</u>

PPOA has not come close to demonstrating that, absent an injunction, any award it may receive from the arbitrator would be an empty victory.  Irreparable harm, elevated by the additional frustration-of-arbitration standard in labor disputes, is the threshold inquiry in this case.  Plaintiff's

failure to satisfy this element disposes of this suit in its entirety.  *See, e.g.*, *United Gov't Sec. Officers*, 646 F. Supp. 2d at 95 (where parties fail to demonstrate irreparable harm, court need not consider other factors).  Plaintiff alleges three categories of irreparable injury that would occur absent an injunction: (1) Postal Police Officers will be placed "at increased risk of physical harm, discipline, and legal liability"; (2) Postal Service letter carriers will be placed "at increased risk of harm and the U.S. mail at increased risk of theft and tampering"; and (3) an "increase[d] likelihood that the Postal Service will eliminate all or most Postal Police [Officer] positions, causing PPOA members permanent job loss and requiring PPOA to divert resources from collective bargaining activities to provide mutual aid."  ECF No. 7 at 41.  The D.C. Circuit has set a high standard for a showing of irreparable injury—which must be: (1) "both certain and great; it must be actual and not theoretical"; and (2) beyond remediation.  *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).

*First*, Plaintiff asserts that the August 2020 Management Communication "threatens irreparable harm to PPOs by undermining their legal authority, increasing exposure to legal liability, discipline, and the inability to stop criminal activity."  ECF No. 7 at 41.  PPOA asserts that Postal Police Officers "are fearful that the Postal Service will not support them if they encounter criminal activity or engage in law-enforcement duties on their patrol," *id.* at 42, but to resolve that fear PPOs need only follow the instructions of their supervisors while the grievance and arbitration process plays out.  With respect to purported "uncertainty" about their roles and authority as a result of the August 2020 communication, *id.* at 42, Defendants submit that the communication, which is directed to Inspection Service management, not PPOs, is clear, and in any case, any uncertainty as to its meaning should be resolved between field management and Headquarters.  PPOs need only follow the directions of their immediate supervisor, and any

discipline that results from their failure to do so can be addressed through the long-standing grievance process outlined in Article 15 of the parties' collective bargaining agreement.  See *See* Peterson Decl., Ex. A at 39-44.  These harms alleged by Plaintiff are simply not the type of "irreparable injury" warranting injunctive relief.

As to the argument that PPOs "are not surveyors and are unlikely to know the exact contours of the Postal Service's real property," *id.*, Congress took this concern into account when recognizing that Postal Police Officers' duty may extend to "areas outside the property to the extent necessary to protect the property or persons on the property."  18 U.S.C. § 3061(c)(1).  And PPOs can seek clarification from their supervisors to the extent they have questions about the boundaries of a particular postal facility to which they are assigned.  Finally, Plaintiff's argument that "[b]y undermining the ability of PPOs to respond to criminal activity, the restriction of Postal Police jurisdiction announced in the [August 2020 Management Communication] constitutes an irreparable injury meriting an injunction," ECF No. 7 at 42, misconstrues the role of Postal Police Officers offsite prior to the issuance of the communication.  *See* Brubaker Decl. ¶¶ 8-15. Consideration of third party harm "should be reserved for the public interest prong of the preliminary injunction standard," *Arriva Med. LLC v. U.S. Dep't of Health & Human Servs.*, 239 F. Supp. 3d 266, 283-84 (D.D.C. 2017), and, in any event, Plaintiff cites to no evidence in this regard, and altogether fails to meet the burden of establishing the necessity of injunctive relief.  *Cf. 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 280 F. Supp. 3d 118, 123 n.1 (D.D.C. 2017) (denying the plaintiffs' motion for a temporary restraining order and preliminary injunction and rejecting the argument that "irreparable harm in the form of diminished safety on the roadways arising from the non-distribution of registration fees to states because participating states are obligated to use those fees for road safety initiatives" warranted injunctive relief because

the "claimed injury [wa]s not supported by any evidence, only Plaintiffs' speculation") (internal

citation and quotation marks omitted).

*Second*, Plaintiff contends that the August 2020 Management Communication "threatens

irreparable harm to letter carriers and the U.S. mail." ECF No. 7 at 43.  As noted *supra*, third party

harm is more properly considered with respect to whether an injunction is in the public interest.

Even if that were not the case, however, Plaintiff's contention regarding harm to letter carriers is

speculative and unsubstantiated, given the fact that most carrier patrols ended years ago.  *See*

Brubaker Decl. ¶¶ 8-15.  Likewise, with respect to the argument that the August 2020 Management

Communication threatens the integrity of the U.S. mail, *see, e.g.*, ECF No. 7 at 25 (alleging that

the directive gives the "[a]ppearance of hindering mail security"), Plaintiff's position that the

limitation of PPO off-property duties compromises the mail is unsubstantiated.  PPOs primarily

protect postal assets, personnel, and mail on postal real property—they do not investigate mail

theft (that is the job of Postal Inspectors, whose jurisdiction continues to extend to the security of

the mail outside of Postal Service real property), and their mail protection work off postal property

has been limited to carrier patrols, which occur in only a few locations across the country and were

largely curtailed in the 2018-2019 timeframe.  *See* Brubaker Decl. ¶¶ 7-15.

*Third*, Plaintiff "fear[s] that the [August 2020 Management Communication] threatens the

very existence of the Postal Police," and contends that absent preliminary injunctive relief, "the

PPO position is likely to be eliminated entirely." ECF No. 7 at 44.  Plaintiff's speculative assertion

is unsubstantiated, *see* Brubaker Decl. ¶ 16, and certainly does not warrant the extraordinary

remedy of injunctive relief.  It is well-settled that economic harm is plainly the type of harm that

could be remedied through an arbitration award.  *Cf. Davis v. Pension Benefit Guar. Corp.*, 571

F.3d 1288, 1295 (D.C. Cir. 2009) (noting that the general rule in this Circuit is that "economic

harm does not constitute irreparable injury").  Plaintiff cites several cases where courts have found irreparable injury in the context of threatened permanent job loss, *see* ECF No. 7 at 45, but in those cases—unlike here—the threat was concrete and particularized.  *See, e.g., Graphic Commc'ns Conference-Int'l Bhd. of Teamsters Local 404M v. Bakersfield Californian*, 541 F. Supp. 2d 1117, 1118 (E.D. Cal. 2008) (employer had announced its intent to terminate a group of employees on a date in advance of the scheduled arbitration); *Food Drivers, Helpers, & Warehousemen Employees, Local 500 v. Samuel Zuckerman Co.*, Civ. A. No. 89-2313, 1989 WL 73771, at *3 (E.D. Pa. June 30, 1987) ("Thus far, the members of the plaintiff union have suffered the loss of their jobs, loss of payments for health and welfare and other fringe benefits into the union funds and remain uninformed as to what their future prospects for employment are.").  Plaintiff has not— and cannot—demonstrate that the directive regarding off-property utilization of PPOs equates or is "almost certain," ECF No. 7 at 45, to equate to permanent job loss.  PPOA also argues that the August 2020 Management Communication "threatens to force PPOA to divert its resources from representing members' interests in their collective bargaining relationship with the Postal Service to providing mutual aid and job training to members once layoffs occur."  ECF No. 7 at 45.  For the same reasons, this speculative and unsubstantiated assertion does not meet the heightened standard necessary to demonstrate a particularized injury that is of such imminence that equitable relief is urgently necessary.

3.  <u>The Public Interest and Balance of Equities Weigh Against the Issuance of an Injunction</u>

PPOA argues that a preliminary injunction would "protect[] the vital public interest in the integrity of the U.S. mail," ECF No. 7 at 46, but, as noted *supra*, Plaintiff's position that the limitation of PPO off-property duties compromises the mail is unsubstantiated.  In fact, Postal Inspectors ensure the integrity of the mail; PPOs primarily protect postal assets, personnel, and

mail on postal real property, a role which is in no way jeopardized by the August 2020 Management Communication.  *See generally* Brubaker Decl.  This case has no relation to Plaintiff's cited cases concerning potential voter disenfranchisement, and indeed, Defendants object to Plaintiff's notice asserting that this is a "related" case under the Local Civil Rules.  It cannot be said to be in the public interest to have federal government employees engaging in law enforcement roles in places where they are not authorized to do so.  In fact, this could open up the government—and hence, the taxpayers—to liability that could otherwise be avoided.  In this sense, Plaintiff's cited authority cuts against them.  *See* ECF No. 7 at 48 (citing *Protect Democracy Project v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 301 (D.D.C. 2007) ("[A]n agency's compliance with a mandatory statutory regime is presumably always in the public interest."); *see also Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977) ("[T]here is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate.").

Finally, Plaintiff argues that the equities favor its position as an injunction would pose no hardship on the Postal Service and only require adherence to longstanding practice.  *See* ECF No. 7 at 48.  For the Court to usurp the control of the Postal Service over management considerations with respect to its employees, particularly where it is the Postal Service's position that maintaining what Plaintiff asserts is the "status quo" is contrary to statutory authority—surely poses a hardship on the Postal Service.  For all these reasons, even if this Court had jurisdiction over Plaintiff's claim for an injunction pending arbitration, Plaintiff cannot demonstrate entitled to injunctive relief.

## CONCLUSION

For the reasons stated herein, Defendant respectfully asks the Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim, and deny Plaintiff's motions for a temporary restraining order and/or a preliminary injunction.

Dated: September 30, 2020                    Respectfully submitted,

                                                  MICHAEL R. SHERWIN
                                                  Acting United States Attorney

                                                  DANIEL F. VAN HORN, D.C. Bar #924092
                                                  Chief, Civil Division

By: */s/ Katherine B. Palmer-Ball*
        KATHERINE B. PALMER-BALL
        D.C. Bar #1014003
        Assistant United States Attorney
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        Phone: (202) 252-2537
        katherine.palmer-ball@usdoj.gov

        *Counsel for Defendants*

*Of Counsel*:

ERIN E. LYNCH
Chief Counsel Labor Law
Office of the General Counsel
United States Postal Service

LOUIS J. DIRIENZO
Assistant Inspector in Charge - Deputy Counsel
Office of Counsel
United States Postal Inspection Service